**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KELLY MARCOS** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:09-CV-319-M (BF) |
| | § | ECF |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred this case to the United States Magistrate Judge for findings, conclusions, and recommendation, pursuant to 28 U. S. C. § 636(b).  This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Kelly Marcos ("Plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income disability benefits ("SSI") under Title XVI of the Act. The Court considered "Plaintiff's Brief," filed July 27, 2009, and "Defendant's Brief," filed August 24, 2009.  The Court has reviewed the parties' evidence in connection with the pleadings and the applicable law, and hereby recommends that the Commissioner's decision be **AFFIRMED**.

**I.     Background[1]**

    **A.     *Procedural History***

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner, which found that Plaintiff was not entitled to DIB or SSI under Titles II or XVI of the Act.

Plaintiff filed applications for DIB and SSI on May 26, 2005. (Tr. 131.) After the Commissioner denied Plaintiff's applications for benefits, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Arthur Schultz held the requested hearing on April 13, 2006, and issued a decision denying Plaintiff's benefits on May 19, 2006. (Tr. 43, 48.) However, the Appeals Council vacated the ALJ's May 19, 2006 decision and remanded the matter for further proceedings.[2] (Tr. 12.) The ALJ held a second hearing on June 19, 2008, where Plaintiff provided additional testimony with the assistance of her former attorney. (Tr. 376-80.) A medical expert ("ME") and a vocational expert ("VE") also testified at the administrative hearing as impartial, expert witnesses. (*Id.*) The ALJ issued a decision on August 4, 2008, finding that Plaintiff was not disabled under the Social Security Act. (Tr. 18.) Plaintiff timely filed a request for a review of the ALJ's decision with the Appeals Council. (Tr. 7-8.) The Appeals Council denied the request by letter dated November 20, 2008, and the August 4, 2008 decision became the Commissioner's final decision. (Tr. 4-6.) The Court has jurisdiction to review the Commissioner's final administrative

---

[1] The following procedural history comes from the record of the administrative proceedings, which is designated as "Tr."

[2] The record does not contain the Appeals Council's remand order, but the ALJ's decision includes the history of the case and indicates that the Appeals Council remanded Plaintiff's case.

decision pursuant to 42 U.S.C. § 405(g). Venue is proper in the Dallas Division of the Northern District of Texas.

**B.**     *Factual History*

1.     Plaintiff's Age, Education, and Work Experience

Plaintiff was born on October 14, 1966, and has a high school education. (Tr. 38.) Plaintiff was thirty-eight years old on April 25, 2005, the alleged onset date of her disabilities. She claimed that she had plantar fasciitis, diabetes mellitus with related neuropathy in hands and feet, insomnia, and osteoporosis. (Tr. 106, 184.) Plaintiff was forty-one years old on the date of the ALJ's August 4, 2008 decision and met the insured status requirements of the Act through December 31, 2009. (Tr. 16, 18, 106.) Prior to filing for benefits, Plaintiff worked as a cashier and a sales clerk, which are classified as light work. (Tr. 380.) Plaintiff also worked as a nurse's aide, which is classified as medium work. (*Id.*)

2.     Plaintiff's Medical Evidence

Several evaluations from Presbyterian Hospital of Greenville, Greenville Community Health Center, and Ladonia Medical Center indicate that Plaintiff suffers from severe diabetes mellitus, neuropathy of the hands, and obesity. (Tr. 247, 259, 264-66.) Records also show that, at times, Plaintiff had frequent diarrhea, diabetic retinopathy of both eyes, and plantar fasciitis (with hyperkeratosis). (Tr. 247, 257, 259, 264-66, 276, 280, 292, 298, 302, 352, 362.) The records show additional complaints, including insomnia, asthma, and anemia. (Tr. 277, 293, 396.)

After evaluating Plaintiff on December 13, 2007, Consulting Physician Kanu Patel, M.D. ("Dr. Patel") determined that Plaintiff had a limited ability to climb stairs, ladders, balance, stoop, kneel, crouch, or crawl. (Tr. 270.) At the time of Plaintiff's consultative examination by Dr. Patel,

3

Plaintiff was 62 inches in height and weighed 254 pounds. (Tr. 15, 264.) Plaintiff suffered from serial pain in both feet that interfered with her ability to sit, stand, or ambulate. (Tr. 15.) Plaintiff had hyperkeratosis on the left foot, and her toenails on both feet appeared dystrophic. (*Id*., et al.) Additionally, Dr. Patel's findings indicated frequent loose bowel movements since June of 2007, numbness of the fingertips, a weak grasp, and gradually worsening eyesight due to diabetic retinopathy. (Tr. 264.)

### 3. Plaintiff's Hearing

After reviewing Plaintiff's records, ME John R. Vorhies, Jr., M.D. testified that Plaintiff's poorly-controlled diabetes complicated by retinopathy and neuropathy are classified as severe with likely progression since the examination. However, Plaintiff did not meet the neuropathy listing. (Tr. 372.) With respect to Plaintiff's vision, the ME noted that her visual impairment is severe and that he is "sure there had been a progression" in her bilateral retinopathy, but she maintained a satisfactory visual field. (Tr. 272, 372, 373-74.) Based on these findings and the medical records of Dr. Patel, the ME considered Plaintiff to have a sedentary residual functioning capacity ("RFC"), suggesting that the complete inability to crawl, crouch, kneel, stoop, balance, or climb was incompatible with the ability to move around one's bedroom. (Tr. 374-75.)

A VE testified at the hearing and responded to the ALJ's hypothetical. The hypothetical concerned a person of Plaintiff's age with Plaintiff's past relevant work experience and RFC determined by the ALJ. The VE determined that the person could perform a representative sedentary job such as a telephone quotient clerk or a document preparer. (Tr. 381.) If the person could not sustain an eight-hour workday or forty-hour workweek, the VE stated there would be no jobs for that person. (Tr. 381.)

Plaintiff testified at the hearing and claimed to have been sick with constant diarrhea for over a year. (Tr. 377-82.) Plaintiff stated that the clinic performed "an X-ray, an EKG, an echocardiogram, and a reflex test. (*Id.*) Plaintiff had initially failed to submit the EKG as evidence, but the results of the EKG turned out to be normal. (Tr. 363, 377-78, 382.)

### C. *ALJ's Findings*

The ALJ issued a decision on August 4, 2008, finding that Plaintiff was not disabled under the Act. (Tr. 12, 371-82.) The ALJ found that Plaintiff had severe diabetes mellitus, obesity, and a history of asthma that is not severe. (Tr. 14.) The ALJ found that Plaintiff's impairments did not meet or equal any listed impairment considered disabling under the Act. (Tr. 14.) The ALJ considered the effects of impairments that included diarrhea, neuropathy of both hands, and diabetic retinopathy, but the ALJ did not find credible the alleged intensity, persistence, and limiting effects of these symptoms. (Tr. 16.)

The ALJ then concluded that Plaintiff retained the RFC to perform sedentary work. Specifically, Plaintiff had the ability to lift or carry up to 10 pounds and to stand or walk for two hours of an eight hour day. Plaintiff also had the need to stretch every thirty minutes and the ability to occasionally use ramps, stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 14.) Plaintiff had a complete inability to climb ladders and/or ropes. (Tr. 14.) In coming to this conclusion, the ALJ recognized that Dr. Patel had placed considerably more limitations on Plaintiff's ability to work, but "reject[ed]" that portion of the examining physician's opinion that limited Plaintiff's ability to sit for up to six hours. (Tr. 15-16.)

The ALJ found that Plaintiff could no longer perform her past relevant work. (Tr. 16.) However, the ALJ relied on the VE's testimony in response to the hypothetical question reflecting

the ALJ's RFC assessment and found that Plaintiff retained the ability to perform other work existing in significant numbers in the national economy. (Tr. 17.) Given this finding, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 17-18.)

## II.     Legal Standard

A claimant must prove that she is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §405(g). The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Having reviewed the applicable legal standards, the Court turns to the merits of the case.

**III.    Issues for Review**

The issues for review are (1) whether the ALJ erred in failing to consider all of Plaintiff's impairments, and (2) whether this error resulted in an RFC finding that is not supported by substantial evidence.

**IV.     Analysis**

Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The plaintiff must provide this evidence, as the plaintiff bears the ultimate burden of establishing disability at all times. *Wren*, 925 F. 2d at 125. Accordingly, Plaintiff had to prove that her diarrhea, bilateral retinopathy, and neuropathy limited her RFC and therefore precluded her ability to perform sedentary work. RFC pursuant to 20 C.F.R. 404.1467(a) and 416.967(a) is defined as a combined "medical assessment of an applicant's impairments with descriptions of physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollins v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988).

Plaintiff contended that the ALJ erred in failing to recognize the limitations suffered due to frequent diarrhea and argues that the ME simply dismissed the complaint as a "new problem." (Tr. 372.) However, the ALJ considered the most recent physical exam in the records, the consultative exam in December 2007, and the records of Plaintiff's diarrhea from June 2007 to December 2007 to make his determination. Plaintiff argued that the need to use the restroom about ten times a day precluded her ability to work, but the ALJ found that Plaintiff's statements concerning the effects of her symptoms are not fully credible. (Tr. 16.) In light of these evaluations and determinations, Plaintiff's arguments are without merit.

Plaintiff argues that her bilateral retinopathy prevented her from performing sedentary work, and that she was unable to afford treatment. Plaintiff's last eye examination was in 2006. (Tr. 276.) However, Plaintiff's testimony that she was unable to afford treatment is without merit because Plaintiff utilized the Greenville Community Health Center and the Ladonia Medical Center, which

8

are charitable medical centers. The records show that Plaintiff received examinations, laboratory tests, and medications from these centers, and Plaintiff testified that she would know the results of her tests from the Greenville Community Health Center on July 22, 2008. (Tr. 377-380.) The ALJ gave Plaintiff time following the hearing to provide new records, such as the EKG that Plaintiff admittedly failed to submit to her attorney prior to the hearing. (Tr. 371, 382-83.) Plaintiff did not submit any additional evidence of her bilateral retinopathy, and the Court finds that the ALJ gave sufficient time for the filing of new records and fulfilled his duty of developing the facts fully and fairly relating to Plaintiff's claim for disability benefits. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). There is no medical evidence to support the proposition that Plaintiff's bilateral retinopathy precluded sedentary work.

Plaintiff's hands and feet are affected by neuropathy, but the ME noted that Plaintiff's neuropathy was primarily sensory, a condition that did not meet the neuropathy listing 908A. To be disabled under this listing, one must have significant and persistent disorganization of motor function to the extremities. (Tr. 372.) With regard to Plaintiff's weak grip, the ME noted that the records did not quantify this impairment. (Tr. 16.) Moreover, Plaintiff stated that she cooked, did her own laundry, and had a valid driver's license. (Tr. 378-79.)

The ALJ fully evaluated the combined effects of Plaintiff's impairments. In determining a claimant's RFC, an ALJ considers the functional limitations of medically-determinable impairments. *See* Social Security Rulings (SSRs) 83-10, 96-8. To be found "not severe," an impairment must be no more than "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F. 2d 1099, 1099 (5th Cir. 1985). The ALJ considered the

9

evidence in connection with the ME's testimony about the diarrhea, the bilateral retinopathy, and visual acuity, and the medical evidence did not support Plaintiff's claims about her visual acuity, diarrhea, and neuropathy. (Tr. 373, 15-16.) After weighing all of the medical evidence together with both Dr. Patel's one-time examination and the ME's opinions, the ALJ ultimately relied on the ME's conclusion and the VE's testimony contained in the record available at the 2008 hearing, that Plaintiff had the RFC for a number of sedentary jobs, with limitations. (Tr. 374, 381.) In doing so, the ALJ properly exercised his authority to determine the credibility and weight given to each opinion. *See*, *e.g.*, *Greenspan v. Shalala*, 38 F. 3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Indeed, the ALJ found that the determinable impairments could reasonably produce the alleged symptoms, but the ALJ believed Plaintiff's statements to be exaggerated. (Tr. 16.) Importantly, the ALJ stated that sedentary work was "not inconsistent" with the instructions for Plaintiff to exercise, which might have helped to relieve the problem as well as reduce her obesity and other health problems. (Tr. 16.)

The ALJ determined that Plaintiff has the RFC to perform sedentary work. (Tr. 14.) Plaintiff failed to meet her burden to establish proof of disability, and also failed to rebut the vocational expert's testimony. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (finding that the burden of proof shifts from the claimant to the Commissioner at step five to show that the claimant is able to perform other work in the national economy, but then shifts back to the claimant to rebut the Commissioner's evidence). The Court therefore finds that substantial evidence supports

the ALJ's determination, and his finding that Plaintiff is not disabled under the Act is not the result of prejudicial legal error.

## V.     Recommendation

For the foregoing reasons, the Court recommends that the decision of the ALJ be **AFFIRMED**.

**SO RECOMMENDED**. 21st  day of June, 2010.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

12

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days of service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).